J-S05001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| G.M.G., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M.C.K., | |
| Appellee | No. 1248 MDA 2015 |

Appeal from the Order Entered June 18, 2015
In the Court of Common Pleas of Clinton County
Civil Division at No(s): 1715-2008

BEFORE:  BENDER, P.J.E., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED FEBRUARY 18, 2016**

G.M.G. ("Mother") appeals *pro se* from the order entered on June 18, 2015, that denied her request to relocate to South Carolina with her and M.C.K.'s ("Father") children, E.M.K., and C.D.K. (the "Children").  The order also directed that the parties share legal custody, but granted primary physical custody of the Children to Father with Mother's having partial physical custody.  We affirm.

The trial court set forth a summary of the factual and procedural history of this case in its Pa.R.A.P. 1925 opinion, dated June 18, 2015, stating:

_____

[*] Retired Senior Judge assigned to the Superior Court.

G.M.G. is the natural mother of E.M.K., born October [] 2003 and C.D.K., born June [] 2005. M.C.K. is the natural father. The parties had resided together, but then separated in July of 2005, one (1) month after C.D.K. was born. Mother filed a Complaint for Custody on November 13, 2008 and this [c]ourt, pursuant to the agreement of the parties, issued an Order on December 23, 2008 granting the parties shared legal custody, Mother primary physical custody and Father partial physical custody.

As indicated in the Opinion of October 22, 2013, no other activity occurred in this file until Father filed a Counter-Affidavit regarding Relocation on August 5, 2013 objecting to Mother's proposed relocation to South Carolina. Father then filed a Petition for Contempt on August 6, 2013, alleging that Mother had relocated [C]hildren to the State of South Carolina and Father had not received any custodial time with [C]hildren since the relocation which was in violation of this [c]ourt's previous Order.

This [c]ourt scheduled a hearing on August 23, 2013, directing Mother and [C]hildren to appear and appointed John P. Boileau, Esquire[,] as Guardian Ad Litem for [C]hildren. This [c]ourt received testimony at hearings scheduled on August 23, 2013 and August 28, 2013 from Mother, Father, Jason Foltz, Chief Probation Officer of Clinton County, Prudence Johnson, Melanie Witherite and the paternal grandmother. This [c]ourt by Order of August 28, 2013 granted Father's Petition for Contempt which was filed August 6, 2013, but did not impose any sanctions. This [c]ourt further denied Mother's oral request to relocate to South Carolina, indicated that the Order of December 23, 2008 shall remain in full force and effect, directed that if Mother failed to reside in Clinton County that primary custody of the children would be transferred to Father and directed Clinton County Children and Youth Social Services Agency to monitor Father's custody with an unannounced home visit one time per week if Father was granted primary custody due to Mother's refusal to obey this [c]ourt's Order. Mother thereafter filed a timely Appeal on September 27, 2013.

The Superior Court in its Memorandum Decision filed April 29, 2014[1] vacated this [c]ourt's Order and remanded the case for further proceedings, indicating that this [c]ourt failed to consider the sixteen (16) factors regarding the award of primary custody found at 23 Pa.C.S.A. § 5328(a). This [c]ourt had discussed and made findings of the relocation factors found at 23 Pa.C.S.A. § 5337(h) and found that Mother should not relocate [C]hildren to the State of South Carolina. Mother refused to remain in the Commonwealth of Pennsylvania and this [c]ourt provided for that possibility in its Order of August 28, 2013, indicating that if Mother chose not to remain in the Commonwealth of Pennsylvania that primary physical custody would be awarded to Father.

Upon remand, Mother filed a request for a hearing on May 23, 2014 and this [c]ourt held said hearings on September 3, 2014 and October 30, 2014. Testifying on September 3, 2014 were Mother, [C]hildren, and Timothy Foster, Clinton County Children and Youth Social Services Agency Caseworker. Testifying at the hearing on October 30, 2014 were the paternal grandmother and Father. At the end of the hearing on October 30, 2014, this Court directed the parties to file Memorand[a] with this [c]ourt on or before November 30, 2014. The deadline of November 30, 2014 was modified by a Consent Order of the parties issued by this [c]ourt on November 17, 2014 which provided that Memorand[a] from counsel would be due thirty (30) days after the production of the transcript of the proceedings of September 3, 2014 and October 30, 2014.

While awaiting the Memorand[a] from counsel, Mother filed a Motion to Reopen Hearing for Additional Testimony on February 5, 2015, which this [c]ourt granted and this [c]ourt heard testimony on April 8, 2015 from Jamie Strunk, elementary school teacher of the youngest child, Lana Weaver, elementary school teacher of the oldest child, Bonnie Colaton-Weaver, guidance counsel [sic]of the school that [C]hildren were attending, Tim Foster, Caseworker of Clinton County Children and Youth Social Services Agency, and Father. This [c]ourt issued an Order on April 8, 2015 similar to the Order issued on

---

[1] **See G.M.G. v. M.C.K.**, 102 A.3d 547 (Pa. Super. 2014) (unpublished memordum).

October 30, 2014, directing the parties to file Memorand[a] on or before June 1, 2015 and any Reply Memorand[a] on or before June 15, 2015. This court has received [] [M]emorand[a] from both parties. Neither party filed [] reply [M]emorand[a].

Mother continues to reside in South Carolina, is forty-one (41) years old, and is employed as a full-time Associate Account Representative at Amica Mutual Insurance in Greenville, South Carolina. Mother lives in Taylors, South Carolina, by herself.

Father resides, except when Father[] cohabitated with Mother, at the same residence that Father has lived for thirty (30) years; 24 Engle Road, Beech Creek, Pennsylvania. Father is forty-two (42) years old and is a seasonal employee with the Pennsylvania Game Commission. Father also has Saturdays and Sundays off from work. Father is currently not involved in any romantic relationships. Father resides with the paternal grandfather. Father has two (2) other daughters who are age twenty-three (23) and twenty-four (24).

Trial Court Opinion (TCO), 6/18/15, at 1-4.

Also, as directed by this Court in its prior decision, the court included in its opinion both a discussion of the custody factors found at 23 Pa.C.S. § 5328(a)(1-) – (16), as well as the relocation factors, found at 23 Pa.C.S. § 5337(h). In its order accompanying its opinion, the trial court again denied Mother's request to relocate, granted Father primary physical custody, and granted Mother partial physical custody of the Children. **See** Order, 6/18/15.

After the issuance of the court's June 18, 2015 order, Mother filed the instant appeal, raising the following eight issues for our review:

1. Did the Lower Court err in support of the immediate "status quo custody" created in August 2013 during a contempt of court hearing that removed two minor children, ages 9 and 8, at the time, from their Mother's custody without considering all new

evidence presented since the decision was vacated and remanded, GMG v MCK 102 A. 3d 547, Pa Superior Court?

2. Was the Lower Court's summation accurate in interpreting the Father's alcohol and drug abuse as inconsequential in the lives or best interests of the children and should this factor been given weighted consideration because it affects the safety of the children?

3. Did the Lower Court err in extending parental rights to the paternal grandparents by proxy without consideration of the Father's dereliction of parental responsibilities and duties, history of ceding parental rights to the grandparents, and no past interest in primary custody?

4. Has the Trial Court erred in directing the Mother to rely upon paternal grandparents on the whereabouts of the children and parenting issues, because the grandparents, while divorced and in separate residences, have assumed in loco parentis care, custody, control of the children, including extra[-]curricular, education, and medical care, without expressly requesting or having been granted this right by the Court, including the impact time historic affect had on the motivations of the party opposing relocation?

5. In considering the paternal grandparents as part of the Father's petition, a dynamic that requires the children move weekly between two, or three residences and four caregivers, while now familiar, following the "status quo" custody, is it consistent in comparison to the children's upbringing with the Mother and has the Lower Court unevenly tipped the balance in a petition between two biological parents?

6. Did the Lower Court err in not considering an alternative partial custody arrangement to maintain a loving relationship with the Father and his extended family to accommodate the Father's requested two weekends per month in existence for eight years prior to legal action against the Mother?

7. Did the Lower Court err in labeling the necessity to relocate as a "whim"?

8. Did the Lower Court err in not considering evidence showing dramatic changes in hostility, obstacles in the maintenance of

communication since "status quo custody" was implemented in August 2013, subsequent difficulties in arranging visitation, including the Father's pattern of behavior of belittling Mother in front of the children, refusal to provide counseling to the children and the resulting influence of attempting to turn the children against the Mother?

Mother's brief at 7-8.

With regard to custody matters, our scope and standard of review are as follows:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)). Furthermore, we note that:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.
>
> *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

*A.H. v. C.M.*, 58 A.3d 823, 825 (Pa. Super. 2012).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)). Furthermore, we recognize that the enactment of the Child Custody Act (Act), 23 Pa.C.S. §§ 5321-5340, governs all proceedings commenced after January 24, 2011. The specific factors that a court must consider are listed at 23 Pa.C.S. § 5328(a)(1) – (16). *See E.D.*, 33 A.3d at 79-80 (holding that "best interests of the child" analysis requires consideration of all section 5328(a) factors). Additionally, 23 Pa.C.S. § 5337(h) provides a list of ten factors that a court must consider when a case involves a relocation.

Here, in its June 18, 2015 opinion and order, the court provided a review of all the factors listed in sections 5328(a) and 5337(h) of the Act as they relate to the specific facts articulated by the witnesses and the conclusions the court reached in light of those findings of fact.[2] The court's

---

[2] Notably, the court also discussed the application of section 5337(j), which provides for reasonable notice of a proposed relocation. The trial court stated:

*(Footnote Continued Next Page)*

review included discussion about the testimony presented at the additional hearings held after the case was remanded by this Court. However, from our review of Mother's *pro se* brief, it appears that Mother is requesting that this Court re-find and/or re-weigh the evidence. As previously indicated, our standard of review requires that we "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." **C.R.F., III v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012). Simply stated, our review of the record reveals that the court's findings are supported by the record. Thus, we are compelled to conclude that Mother's issues are without merit.

*(Footnote Continued)* ────────────

Obviously, Mother relocated to South Carolina knowing that Mother's move was in violation of this [c]ourt's previous Orders. Mother took the children to South Carolina on July 26, 2013 prior to receiving permission to relocate from this [c]ourt and prior to the thirty (30) days' notice expiring concerning the notice Mother had given Father of the proposed relocation. This Court finds that such actions by Mother with full knowledge of the violation that Mother was committing should be considered a factor in determining whether relocation should occur, whether custody rights should be modified, and whether the children should be placed with non-relocating Father.

TCO at 10.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2016