J-A04027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| E.J.C., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| I.M.C. | |
| Appellant | No. 1361 WDA 2015 |

Appeal from the Order Entered August 14, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2011-1128-CD

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 08, 2016**

I.M.C. ("Mother"), appeals *pro se*[1] from the August 14, 2015 order denying her petition for modification of the custody order awarding E.J.C. ("Father") primary physical custody of their son, N.M.C. ("Child"), born in August of 2006. After careful review, we affirm.

The parties to this action, Father and Mother, were married in October of 1993 and are the parents of Child. Father and Mother separated in May of 2011, at which time Father continued to reside in the marital home in

_____

[1] After filing the notice of appeal on behalf of Mother, Mother's counsel filed a petition to withdraw as her counsel in this case, which was granted by this Court on October 14, 2015. *See* Order Granting Application to Withdraw as Counsel, 10/15/15 (stating "[Mother] is advised that [she] is now proceeding *pro se* in this appeal (although [Mother] has the option of retaining substitute counsel)").

Houtzdale, PA, and Mother relocated to Ligonier, PA with her paramour, Ken Parker ("Mr. Parker"). Findings of Facts, 5/3/12, at 1-2. Father initiated divorce proceedings in September of 2011 and requested primary physical custody of Child. Complaint in Divorce, 7/13/11, at 1-4. After a custody hearing was held in this matter in March of 2012, the trial court issued an order ("Custody Order") and opinion dated April 27, 2012, awarding Father primary physical custody subject to Mother's periods of partial custody.[2] The Custody Order also granted Father and Mother shared legal custody. The following relevant findings of fact were subsequently issued by the trial court:

> 6. [Father] is currently employed as a dispatcher for Christoff-Mitchell Petroleum [("CMP Energy")] and also works part-time as his schedule permits as an [emergency medical technician ("EMT")] for several ambulance services and Penn State University.
>
> 7. [Father's] work hours are from 7:00 a.m. to approximately 4:30 p.m., with a slightly shorter shift in the summer and a longer one in the winter. There are also some Saturday work days, apparently one or two per month. His EMT work is entirely discretionary with [Father].
>
> …

_____

[2] Pursuant to the Custody Order, Father has primary physical custody of Child, and Mother and Father share legal custody. During the school year, Mother has partial physical custody three weekends per months. During the summer months, Mother has custody the first and third full week of each month, in addition to her three weekends per month. Custody is shared during holidays per the schedule specified in the Custody Order. Custody Order, 4/27/12, at 1-2.

9. [Child] is a special needs child, suffering from high functioning autism.

10. For the first three years of [Child's] life, [M]other was the primary care giver in view of [F]ather's employment, although during the last year and one/half before separation [M]other was occasionally gone out of town for multiple overnights relating to her work.

11. Mother is currently employed by Laurel Mountain Leasing, a company owned by [Mr. Parker,] along with other members of his family. She claims an income of $500.00 per month. …

12. When [Mother] was working out of the area, [Father] with the aid of babysitters performed parental duties.

13. Both [Mother] and [Father] have extended family in the Houtzdale/Clearfield County area, but no family in the Ligonier area.

14. Both before the separation of the parties and since, Bertha Reams [("Ms. Reams")] has acted as babysitter for [Child]. She is [Mother's] sister and lives approximately 6 ½ miles away from [F]ather. She provides extensive services to [F]ather during his work times when [F]ather has custody of [Child].

15. [Child] has attended the New Creations Pre-school program sponsored by an area Lutheran Church since February of 2010, and is doing well in that program. He has made friends there and has a positive relationship with staff.

16.[Child] receives special services through the Central Intermediate Unit as well as speech therapy, with the services being made available at New Creation.

…

19. Father has no intention of relocating, as he grew up and has worked his entire life in [the] Houtzdale area.

20. While each parent indicates that they are in favor of liberal contact by [Child] with the other parent, each has been difficult on that issue at some times in the past.

21. [Mother] is currently on probation following a guilty plea to various counts of theft, relating to her embezzlement from an area fire company where she was secretary and her husband president. At her sentencing hearing, counsel for [Mother]

inaccurately represented to the court that [F]ather was "out of the picture" and she was the sole custodian of her son. Apparently[,] this was done so that she could avoid a jail sentence.

22. Each parent is capable of providing a positive and safe atmosphere for [Child].

23. [Child] is comfortable in his current home where he grew up, and has positive relationships with neighbors and family members from both his father[']s and mother['] families. Father makes sure that [Child] maintains contact with [M]other's family even though she is out of the area.

…

26. [Father] is the more stable of the two parents, in that [Mother] is currently in a relationship with her employer who remains married to another and has children despite his relationship with [Mother].

…

29. At one time, when [Mother] was frustrated by [Father's] refusal to let [Child] go with her, she solicited other family members in an attempt to surreptitiously remove [Child] from his father's custody and take him away to Westmoreland County.

30. [Father] paid approximately $10,000.00 on behalf of [Mother] relative to restitution for her criminal activities. Mother at that time made comments indicating that under no circumstances would she go to jail, even if it involved killing herself and her child in a car wreck.

31. Neither parent suffers from any serious physical or mental abnormalities, nor any drug or alcohol problems.

32. One significant point of contention between the parties is the role of Mr. Parker, [Mother's] paramour. Contrary to [F]ather's wishes, [M]other frequently brings him to custody exchanges at a state police barracks in Ebensburg, Pennsylvania, and also has brought him into the former marital residence now occupied by [Father] on various occasions.

33. As a reaction to Mr. Parker's presence, [Father] has posted crude and anti-semetic [sic] references to Mr. Parker in letters on his refrigerator in his home, anticipating that Mr. Parker would see them when he entered.

…

36. Despite the distances involved, [M]other has been involved in many of [Child's] pre-school activities, teacher meetings, and the like.

37. [Child] apparently attends a program in Ligonier, but [F]ather has not been involved, as he received virtually no notice of some recent events.

38. While by some measurements the school system in Ligonier may be superior to that of the Moshannon Valley, the [c]ourt is convinced that either school, with appropriate supportive services, can provide a good education for [Child].

39. [Mother and Father] have very poor communications, and each blames the other for starting arguments. The police have intervened on occasion, and custody exchanges do take place at a police station.

…

46. On at least some occasions[, F]ather has been critical of [M]other, which seems to be upsetting to [Child].

Findings of Fact, 5/3/12, at 1-5.

On May 24, 2012, Mother filed a notice of appeal from the Custody Order, contesting the award of primary custody to Father. After careful review of the record, we issued an order and opinion dated December 24, 2012, affirming the trial court's decision.

On May 13, 2014, Mother filed a petition to modify custody listing the following grounds for relief:

a. [Father] has refused to cooperate with co-parenting [Child];

b. [Father] has refused to promote the relationship of [Child] and [Mother];

c. [Mother's] circumstances have stabilized to the extent that it is now conducive to her having primary custody of [Child];

d. [Mother] is more suited to dealing with the special needs of [Child];

e. [Mother's] current employment allows flexibility of scheduling rendering her more able than [Father] to address parenting duties.

Mother's Petition to Modify Custody, 5/13/14, at 1-2. In response to Mother's petition, the trial court scheduled another custody hearing, which was held on April 17, 2015. Testimony was heard from Mother, Father, Mr. Parker, and Sherri Campbell ("Ms. Campbell"), the principal at Child's present school in Moshannon Valley School District, which we summarize in relevant part herein.

Father testified that he remains employed at CMP Energy, and his regular work hours are Monday through Friday, from 8:15 a.m. to 5:00 p.m., and every third Saturday. N.T. Custody, 4/17/15, at 116-117. Father further indicated that he has flexibility to go to work late or to stay home from work in the event there is a 2 hour school delay or Child is sick. *Id.* at 117-118. Father also works part-time as a licensed EMT on weekends, but stated that his part-time jobs do not interfere with his time with Child, because he schedules his work around his weekends with Child. *Id.* at 118. On weekdays, Father typically gets Child ready for school and puts him on the bus before 8:00 a.m. After school, the bus drops Child off around 4:15 p.m., and Child's aunt, Ms. Reams, picks him up and takes him to her house. Father then picks Child up after work and gets home around 5:30 p.m. Father helps Child with homework, feeds him dinner, and puts him to bed at 8:00 p.m. *Id.* at 120-123.

Mother testified that Mr. Parker divorced his first wife in 2014 and that she and Mr. Parker are now engaged. *Id.* at 4-6, 86. They are currently leasing a home together in Latrobe, PA. *Id.* Mother is presently self-employed selling phone systems, and splits her time between working from her office in Greensburg, PA, and working from her home office. *Id.* at 27. Mother indicated that she has the ability to schedule her own work hours and, therefore, has the flexibility to work around Child's needs. *Id.* at 27-28. During her custodial time with Child, Mother stated that she performs normal parental duties for Child, takes him to special social skills classes for children with autism at Stepping Stones, and takes him to the doctor when he is sick. *Id.* 13-14, 18-19. Moreover, Mother informed the court that she has been released from probation, but is still paying fines for her prior criminal convictions. *Id.* at 46. We also find it worthy to note that during Mother's testimony, the trial court commented on the poor communication between Mother and Father. The court expressed its observation that the parties' communication had seemingly not improved any since the initial custody hearing in 2012. Mother agreed. *Id.* at 81-82.

When asked about Child's academic standing, Ms. Campbell provided, "he's definitely a primarily A student, sometimes B student. Very personable within the classroom, he has very good interactions with his peers and adults, too." *Id.* at 161. She further explained that Child falls under the disability category of autism and, therefore, receives special services through an individualized education plan. *Id.* at 162. He receives autistic

support based on his autism diagnosis, as well as speech and language support. *Id.* Ms. Campbell added that Child is "a lovely young man," has good interactions with his fellow students and his teachers, and that he is comfortable with his routine at school. *Id.* at 162-163. Moreover, Ms. Campbell indicated that both parents are involved with Child's school activities and conferences at school. *Id.* at 167-168.

After speaking with Mother, Father, and Child, and listening to the testimony at the most recent custody hearing, the guardian *ad litem* ("GAL") for Child issued a report recommending that Mother be awarded primary physical custody. GAL Supplemental Report, 7/10/15, at 1-2. In her report, the GAL reasoned that Mother would be able to spend more time at home with Child and would be more likely to encourage a relationship between Child and Father. Her report further indicated that Child expressed a clear desire to live with Mother. *Id.*

On August 14, 2015, the trial court issued an opinion and order denying Mother's petition for modification and ordering that the April 27, 2012 Custody Order remain unchanged. On August 24, 2015, Mother filed a timely notice of appeal, followed by a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a statement indicating that it would rely on its August 14, 2015 opinion and order in lieu of issuing a Rule 1925(a) opinion.

Mother now presents the following issues for our review on appeal:

A.  Did the lower court err in determining that [Father] will equally encourage and permit frequent and continuing contact between [Child] and [Mother]?

B.  Did the lower court err in determining that [Father] will perform the parental duties necessary to maintain a loving, stable, consistent and nurturing relationship with [Child]?

C.  Did the lower court err in determining the stability and continuity in [Child's] education, family life and community life will be better served with [Father]?

D.  Did the lower court err in determining that [Father] will equally attend to the daily physical, emotional, developmental, educational and special needs of [Child]?

E.  Did the lower court err in determining that [Father] is more likely to make available the parties' extended family and [C]hild's sibling relationships?

F.  Did the lower court err in determining that [Father] did not attempt to turn the minor [C]hild against [Mother]?

G.  Did the lower court err in failing to take into account the well-reasoned preference of [Child]?

H.  Did the lower court err in determining that the proximity of the residences of the parties weighs in favor of [Father]?

I.  Did the lower court err in failing to take into consideration the level of conflict between the parties especially the animosity of [Father] toward Mother's fiancé?

J.  Did the lower court err in failing to take into consideration the well-reasoned opinions and recommendations that the Guardian Ad Litem produced through her reports to the lower court?

K.  Did the lower court err in granting primary physical custody to [Father]?

Mother's Brief at 1-2.

When presented with child custody matters, we are guided by the following scope and standard of review:

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual finding, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

*S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). Additionally, we note that:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (internal citations and quotation marks omitted).

The paramount concern with any child custody case, including petitions for modification, is the best interests of the child. *Id.* at 539. "The 'best-interests' standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004). Furthermore, we recognize that the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340, governs all proceedings commenced after January 24, 2011. As we stated in *A.V. v. S.T.*, 87 A.3d 818 (Pa. Super. 2014):

- 10 -

Section 5328 [of the Act] provides an enumerated list of sixteen factors a trial court *must* consider in determining the best interests of the child … when awarding any form of custody:

### §5328. Factors to consider when awarding custody

**(a)** **Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)   The proximity of the residences of the parties.

(12)   Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)   The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)   The history of drug or alcohol abuse of a party or member of a party's household.

(15)   The mental and physical condition of a party or member of a party's household.

(16)   Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[3]

**A.V.**, 87 A.3d at 821-822 (emphasis added).  We further explained that:

The Act requires a court to consider all of the § 5328(a) best interest factors when ordering any form of custody.  Sections 5323(a) and (d) reinforce this mandate by requiring a court to delineate the reasons for its decision when making an award of custody either on the record or in a written opinion.  Mere recitation of the statute and consideration of the § 5328(a) factors *en masse* is insufficient.  A trial court's failure to place its

_____

[3] Although Mother and Father live approximately 100 miles apart, the trial court did not find it necessary to discuss the specific relocation factors found at 23 Pa.C.S. § 5337(h).  We are satisfied that the court gave sufficient consideration to the effect relocation would have on Child as part of its best interest analysis pursuant to 23 Pa. C.S. § 5328(a).  **See** Trial Court Opinion ("TCO"), 8/15/15, at 5, 8 (discussing the need for stability and continuity in Child's education, family life and community life pursuant to section 5328(a)(4) and the proximity of the residences of the parties pursuant to section 5328(a)(11)).  Therefore, we do not believe a remand is required in this case, as suggested by this Court's decision in **D.K. v. S.P.K.**, 102 A.3d 467 (Pa. Super. 2014).

- 12 -

reasoning regarding the § 5328(a) factors on the record or in a written opinion is an error of law.

**S.W.D.**, 96 A.3d at 401-402 (internal citations and quotation marks omitted).

Accordingly, the trial court carefully considered the best interest factors set forth in section 5328(a), as evidenced by the following relevant portion of its August 15, 2015 opinion:

> **1. Which party is more likely to encourage and permit frequent and continuing contact between the child and the other party[?]**
>
> The [c]ourt will first examine who is more likely to encourage and permit contact between Child and the other party. 23 Pa.C.S. § 5328(a)(1). The [c]ourt reminds each party that despite the breakdown of their relationship, the Plaintiff is still [] Child's father, and the Defendant is still his mother. It is in [] Child's best interest that he maintain frequent and continuing contact with each parent, and that each parent be involved in [] Child's life. Both parties appear to be making efforts to encourage communication between [] Child and the other party. However, it also appears that they could do more to foster communication between [] Child and the other party and this [c]ourt agrees. Accordingly, this factor weighs equally in each party's favor.
>
> **2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**
>
> The [court] does not find this to be a relevant factor at this time.
>
> **3. Parental duties performed by each party on behalf of the child and which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child.**
>
> The [c]ourt must correspondingly consider the parental duties performed by both parties and which party is more likely to

- 13 -

maintain a loving, stable, consistent, and nurturing relationship with Child. 23 Pa.C.S. § 5328(a)(3), (9). These factors weigh equally for each parent. It appears to the [c]ourt that both parties love and care for [] Child and that both parties adequately perform their parental duties on behalf of [] Child when [] Child is in each party's respective care.

### 4. The need for stability and continuity in [Child's] education, family life and community life.

The Court must examine which parent can better provide stability and continuity in [] Child's education, family life, and community life. 23 Pa.C.S. § 5328(a)(4). [] Child lives with Father in the home [] Child has lived in since birth. [] Child visits frequently with Mother. [] Child attends school, as he always has, in the Moshannon Valley School District. However, Mother proposes that she be awarded primary physical custody. Mother lives in Latrobe, PA and primary physical custody in Mother would require [] Child to change schools, and move over 100 miles away from the area and community to which he has grown accustomed.

Indeed, the [c]ourt finds that stability and continuity in [] Child's educational, family and community life is highly significant in the present case. Mother's proposed change of school districts and living arrangements would be highly disruptive to the stability that [] Child currently enjoys. It appears to the [c]ourt that [] Child is benefitting from the current custody arrangement, and the [c]ourt sees no need to alter the life to which [] Child has grown accustomed. Accordingly, this factor weighs heavily in Father's favor.

### 5. Which Party is More Likely to Attend to the Daily Physical, Emotional, Developmental, Educational, and Special Needs of the Child[?]

Additionally, the [c]ourt must consider which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the [c]hild. 23 Pa.C.S. § 5328(a)(10). [] Child is diagnosed with autism, and the parties are both adequately attending to his special needs in that regard. [] Child is doing well in school and developing well physically, emotionally, and mentally. Testimony was offered to indicate that each parent is engaged in [] Child's educational needs when in their custody. Therefore, this factor weighs equally for each parent.

- 14 -

**6. The availability of the parties' extended family and the child's sibling relationships.**

The [c]ourt, in determining custody, also takes into consideration the availability of the parties' extended family and the child's sibling relationships.  23 Pa.C.S. § 5328(a)(5)[,](6). [] Child has no siblings, however, [] Child does have extended family on both sides in the Clearfield County area.  Conversely, [] Child has no extended family in the Latrobe area. Accordingly, this factor weighs in Father's favor.

**7. The parties' ability to make the appropriate childcare arrangements.**

The [c]ourt must also examine the parties' abilities to make the appropriate childcare arrangements.  23 Pa.C.S. § 5328(a)(12). Both parties appear to be able to make appropriate child care arrangements when [] Child is in their care.  Mother suggests that [] Child would be better served by awarding her primary custody because she is more readily available to care for [] Child than Father is due to his work schedule.  Indeed, the [c]ourt notes that Mother's work situation permits her to be more available as a stay-at-home mother.  This is a highly suitable, and quite possibly, even preferable child care arrangement. However, the [c]ourt will not fault Father, or place him at a disadvantage, for maintaining a career.  In fact, Father has made suitable child care arrangements to attend to [] Child's needs while he is at work.

The [c]ourt believes that both parents are doing their best to take care of Child and make sure that they have appropriate supervision and care during their absences.  Indeed, the [c]ourt finds that the child care arrangements of each party are suitable. Thus, this factor [] weighs equivalently in favor of both parties.

**8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

The [c]ourt does not find this to be a relevant factor in the present case.

**9. The well-reasoned preferences of the [child], based on the [child's] maturity and judgment.**

- 15 -

The [c]ourt had the opportunity to meet with [] Child. [] Child appears to be a thoughtful and articulate and [] delightful child. The [c]ourt finds that [] Child loves both of his parents. Though [] Child did blurt out that he wished to live with his Mother, the [c]ourt suspects that this interjection was the product of parental coaching. Accordingly, due to [] Child's age, and the [c]ourt's concern that [] Child was coached, this factor is of little significance at the present time.

**10.    *The proximity of the residences of the parties.***

The [c]ourt must also scrutinize how the location of the parties' residences will affect custody of [] Child. 23 Pa.C.S. § 5328(a)(11). Father lives with [] Child in Morrisdale, where [Child] attends school, while Mother lives more than 100 miles away in Latrobe, PA. Custody exchanges do not appear to be a problem; and for reasons relating to other factors discussed herein, this factor tips in Father's favor.

**11.    *The mental and physical condition of a party or member of a party's household.***

The [c]ourt finds this factor to be irrelevant at this time.

**12.    *The history of drug or alcohol abuse of a party or member of a party's household.***

The [c]ourt does not find this to be a relevant factor at the present time.

**13.    *The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.***

The [c]ourt must also examine the level of conflict existing between the parties. 23 Pa.C.S. § 5328(a)(13). There appears to remain a marked level of conflict between the parties. Persistent conflict is not in [] Child's best interest and the parties are urged to put their differences aside when it comes to [] Child. Accordingly, this factor weighs in favor of neither parent.

**14.    *Any other relevant factor.***

The Guardian *ad litem* for [] Child has filed a report in this matter which indicates it is her opinion that [] Child would be

better served by awarding Mother primary physical custody. The [c]ourt has carefully considered this report, and finds that the Guardian *ad litem*'s report is a relevant factor to consider. And though it does tip in Mother's favor, the [c]ourt is free to accept or reject it in whole or in part, and it is but one of many factors to weigh and consider when determining the best interest of the [c]hild in a custody matter.

### *Conclusion*

Simply put, Mother has not sufficiently met her burden to convince this [c]ourt that the benefits of her proposed custody modification are in the best interests of [] Child. Rather, considering the testimony, evidence, and each statutory factor as a whole, the [c]ourt finds the best interests of Child [are] served by maintaining custody of [] Child in accordance with the existing custody order dated April 27, 2012.

TCO at 4-10 (unnecessary capitalization omitted).

Here, Mother essentially challenges the trial court's findings in regards to each Section 5328(a) factor that the court concluded weighed either in favor of Father or equally towards Mother and Father. Mother asserts, generally, that the trial court failed to properly apply the facts established in the record and erred in failing to follow the recommendation from the GAL. Mother's Brief, at 4. However, we disagree with Mother's assertions.

As we explained in *M.J.M v. M.L.G.*, 63 A.3d 331 (Pa. Super. 2013):

The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors. 23 Pa.C.S.A. §§ 5323(d), 5328(a). … [T]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. For example, from the trial court's Explanation of Decision in the case at bar, it is clear that while the trial court found the majority of the section 5328(a) factors to balance fairly equally between Mother and Father, the trial court found that Father was

- 17 -

more likely to promote a relationship with Mother than Mother would with Father and that Mother's attention to Child's educational needs was a point of grave concern. The trial court further concluded that Father would better attend to these needs. … Thus, in its Explanation of Decision, the trial court did precisely what it should have done; it weighed the entirety of the section 5328(a) factors in making the custody determination and articulated its considerations in a manner that informed the parties of the reasons for the custody award.

*Id.* at 336.

Similarly, in the present case, the trial court weighed all of the section 5328(a) factors and found many of the factors to weigh equally in favor of Mother and Father. However, it is clear that the trial court gave great consideration to Child's stability, both in his home life with Father and at school, which is of particular importance in this case due to Child's age and autism diagnosis. Mother is essentially asking this Court to re-evaluate the trial court's credibility determinations and re-weigh the evidence, which we will not do. After careful review of the record, we determine that the trial court has properly weighed all of the relevant factors as set forth in section 5328(a), and that it adequately articulated its reasons for its custody decision, which are well-supported by the record.

In response to Mother's objection to the trial court's failure to follow the recommendations of the GAL or Child's stated preference, we note that "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *D.K.*, 102 A.3d at 479 (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011)). Moreover, the weight to be attributed to a child's

testimony can best be determined by the judge before whom the child appears. ***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006).

In the case at bar, the trial court acknowledged that Child stated he would prefer to live with Mother. However, the court explained that it believed Child's statement to be the result of parental coaching. TCO at 8. Moreover, the trial court acknowledged that it gave careful consideration to the GAL's report, but that her opinion was only one of many factors that it considered in making its custody determination. We discern no abuse of discretion by the trial court.

For the reasons provided above, we affirm the court's order denying Mother's petition to modify custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2016