**Laura ARNOLD, Appellee,**

v.

**Scott ARNOLD, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 2003.
Filed March 8, 2004.
Reargument Denied May 17, 2004.

William M. Blaum, Scranton, for appellant.

Kelly M. Carrubba, Tunkhannock, for appellee.

BEFORE: DEL SOLE, P.J., FORD ELLIOTT and KELLY, JJ.

OPINION BY DEL SOLE, P.J.:

¶1 Scott Arnold (Father) appeals from a custody order awarding primary physical custody to Mother and allowing her to relocate the children to Canada. Father also appeals from the order of court denying his petition for recusal of the trial court judge. Upon review, we affirm.

¶2 Laura Arnold, now by marriage, Laura Pountney, (Mother) and Father were married and subsequently divorced in October 2001. The parties had two minor children. An order dated March 19, 2001, gave Mother and Father joint legal custody of the children, awarding primary physical custody to Mother and partial custody to Father.

¶3 In February 2002, Mother filed a petition for special relief seeking to relo-

cate both children to Canada. Following a hearing, the trial court issued an order, dated March 5, 2002, allowing relocation. In considering the request to relocate, the trial court conducted a *Gruber*[1] analysis and determined that the move to Canada was based on sound economic reasons that would benefit the family.

¶ 4 Father filed an appeal to this Court. This Court, by Memorandum and Order dated August 13, 2002, vacated the order of the trial court and remanded the matter for proceedings consistent with the Memorandum. In vacating, this Court determined that the children's situation would not necessarily be improved by the relocation.

¶ 5 Upon remand, the trial court scheduled a hearing so that evidence and testimony could be presented regarding the children's relocation to Canada. Father filed a petition for special relief to have the children returned to Pennsylvania. The trial court subsequently entered an order dated August 28, 2002, which gave Father physical custody and instructed Father to enroll the eldest child in kindergarten in Pennsylvania. A hearing, purportedly pursuant to the remand order from the Superior Court, was scheduled for November 25, 2002.

¶ 6 Another hearing was held on September 6, 2002, for purposes of presenting evidence regarding Mother's then-current situation. By order of court dated September 9, 2002, the trial court ordered that primary physical custody be in Mother pending the remand hearing.

¶ 7 Father then filed an emergency application for enforcement of the Superior Court's August 13, 2002, Memorandum and Order. This Court then issued an Order dated September 18, 2002, which stayed the trial court's order of September 9, 2002. This Court rendered a Judgment Order on November 4, 2002. In it we explained that reassessment of the issue of the children's relocation was not before the trial court on remand. *Arnold v. Arnold,* 409 MDA 2002, 816 A.2d 322 (Pa.Super. filed November 4, 2002). The Judgment Order remanded the matter with the following instructions:

> ...the trial court's Order of September 9, 2002, awarding to Laura Pountney primary physical custody of the parties' two children, having been stayed by this Court on September 18, 2002, is hereby vacated. The trial court is directed to fashion an order either 1) awarding primary physical custody of the children to Scott Arnold, partial custody to Laura Pountney, or 2) awarding primary physical custody to Laura Pountney on condition that the children remain in Pennsylvania, with partial custody in Scott Arnold. In either event, Samantha Arnold is to be enrolled in the Tunkhannock Area School District.

*Arnold v. Arnold,* 409 MDA 2002, at 3, 816 A.2d 322 (Pa.Super. filed November 4, 2002).

¶ 8 By way of court order dated November 8, 2002, the trial court rendered an order granting physical custody to Mother, on the condition that she relocate her residence to Wyoming County, Pennsylvania. On November 13, 2002, Father filed a petition for modification of custody. The court scheduled a hearing on Father's petition for January 17, 2003. Father also filed a motion requesting the judge's recusal on November 25, 2002, which motion was denied on November 26, 2002.

¶ 9 On November 27, 2002, the trial court entered an order approving the parties' temporary custody stipulation and incorporated the stipulation into the order.

1. *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990).

On January 10, 2003, Mother filed a petition for modification, again seeking to relocate with the children to Canada.

¶ 10 Following a hearing on the petitions to modify, the court entered an order dated January 20, 2003. The order awarded Mother primary physical custody effective July 19, 2003, and allowed her and the children to relocate to Canada. Father was awarded partial physical custody effective July 19, 2003. Father filed this appeal of the trial court's November 26, 2002, order denying Father's petition for recusal and of the trial court's order dated January 20, 2003, granting Mother primary physical custody and allowing the children to relocate to Canada.

■ ¶ 11 Child custody cases are reviewed by this Court under a well-settled standard:

> Our paramount concern and the "polestar of our analysis in this case, and a legion of prior custody cases, [is] the best interests of the child." The "best interests" standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Sawko v. Sawko,* 425 Pa.Super. 450, 625 A.2d 692, 693 (1993) (citations omitted).

¶ 12 Further, "on the issues of credibility and weight of the evidence, we defer to the findings of the trial judge." *Andrews v. Andrews,* 411 Pa.Super. 286, 601 A.2d 352, 353 (1991) (citation omitted). Additionally, "appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record." *Robinson v. Robinson,* 538 Pa. 52, 645 A.2d 836, 838 (1994).

■ ¶ 13 Father first argues that the trial court erred and/or abused its discretion in failing to recognize and follow this Court's Memorandum and Order dated August 13, 2002, and the Judgment Order dated November 4, 2002. Appellant's Brief at 34. Appellant maintains that this previous Memorandum and Order and the Judgment Order constitute the law of this case and must be followed. *Id.*

■ ¶ 14 Regarding orders in child custody cases, this Court has stated:

> Child custody orders are temporary in nature and always subject to change if new circumstances affect the welfare of a child. The Commonwealth has a duty of paramount importance, to protect the child's best interests and welfare. To that end, it may always entertain an application for modification and adjustment of custodial rights.

*Kassam v. Kassam,* 811 A.2d 1023, 1025 (Pa.Super.2002). We find no merit to Father's claim that the trial court was bound by our previous orders. Custody orders are subject to change. In this case the circumstances upon which those previous orders were based had changed. The trial court, in awarding Mother primary physical custody and allowing her and the children to relocate to Canada, made its decision based on the best interest of the

children. Thus, we find no error of law or abuse of discretion in its determination.

¶ 15 Next, Father asserts that Mother did not sustain her burden of proof in establishing the proposed advantages of the move. Appellant's Brief at 38. Father further maintains that the trial court's determination is not supported by evidence of record. *Id.*

¶ 16 Because this matter involves an issue of relocation, the evidence must be reviewed in light of each of the factors enunciated in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990), which must be applied under the "umbrella of the ultimate objective of determining the best interests of the child." *Dranko v. Dranko*, 824 A.2d 1215, 1219 (Pa.Super.2003). *Gruber* requires the court to consider:

[1] the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

[2] the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; [and]

[3] the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Reefer v. Reefer*, 791 A.2d 372, 376 (Pa.Super.2002) (quoting *Gruber*, 583 A.2d at 439).

¶ 17 The trial court, in applying the tripartite analysis required by *Gruber*, found it in the best interests of the children that primary physical custody be with Mother in Canada. The trial court conducted a thorough analysis pursuant to *Gruber*. The trial court found there was a turnabout in the analysis of which party offers the greater economic security to the children, determining that Mother was now able to provide a more secure environment. Furthermore, the trial court concluded that:

The best interests of the children were furthered by being raised by their mother rather than their grandmother; that they should not be separated from their half-sister; that the significant and extended periods of partial physical to occur in Pennsylvania, will permit [Father] to foster his relationship with the children and permit significant contacts with both paternal and maternal grandparents.

Trial Court Opinion, 3/4/03, at 6. Additionally, the trial court determined Father's real purpose in opposing relocation was not so that he would be able to raise the children, but that Mother would not.

¶ 18 We find that the trial court's findings of fact and conclusions of law are supported by the record. The trial court made credibility determinations to which we must defer. *See Andrews*, 601 A.2d at 353. Accordingly, we find no error of law or abuse of discretion by the trial court in granting Mother's petition for modification of custody.

¶ 19 Appellant also argues that the trial court erred in failing to find that the integrity of Mother's motives in her proposed relocation was impure. Appellant's Brief at 48. Appellant maintains that Mother's relocation to Canada was the result of a whim and not a well-contemplated decision. *Id.* at 48–49.

¶ 20 The trial court concluded that Mother's relocation to Canada with the children would improve their quality of life. Mother moved to Canada to live with the man she had married. Her new husband was employed in Canada and re-

ceived support from his family. Mother would also receive support from her husband's family in Canada. In Pennsylvania she was living in subsidized housing, while in Canada she had suitable housing for her and her family in a family-owned property. Mother was also eligible for medical coverage through the Canadian national healthcare plan upon relocation. Thus, we cannot conclude that the trial court erred in failing to find that Mother's relocation was merely the result of a momentary whim.

¶ 21 Next Father argues that the trial court's determination of available realistic substitute visitation arrangements represented an abuse of discretion by the trial court. Appellant's Brief at 50. Father contends that the trial court's visitation arrangement does not adequately foster an ongoing relationship with the children and Father. *Id.*

¶ 22 We disagree. The January 20, 2003, order provides for visitation by Father two weekends per month in Ontario, Canada. Father also has the children in Pennsylvania from December 26 through January 1 and from the third Friday in June until the third Friday in August every year. Father is also entitled to spend any Easter or Spring vacation the children may have from school with the children. The visitation arrangement constructed by the trial court provides for significant and extended periods of visitation with the children which will permit Father to foster his relationship with the children.

¶ 23 While Father may not see the children as often as he had prior to the January 20, 2003, order, that does not result in the relocation being defeated under *Gruber.* We do not require visitation to be as frequent as prior to the relocation in order to allow the relocation. *See Boyer v. Schake,* 799 A.2d 124, 129 (Pa.Super.2002).

¶ 24 We also note Appellant's complaint that the seven-hour trip to Canada for weekend visits causes a hardship and will perhaps result in him not being able to spend the maximum time of the permitted visitation with his children. This Court has stated: "A change in visitation arrangements necessitated by 'geographical distances will not defeat a move which has been shown to offer real advantages to the custodial parent and the children.'" *Boyer v. Schake,* 799 A.2d 124, 129 (Pa.Super.2002) (quoting *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990)). In *Boyer, supra,* this Court held that a sixteen-hour roundtrip was acceptable because the advantages of relocation justified those hours in the car. While perhaps this amount of travel is an inconvenience for Father, it cannot serve to defeat Mother and children's relocation in this case.

¶ 25 Appellant next asserts that the trial court erred in failing to consider additional factors in this case because the relocation involved an international move. Appellant's Brief at 51. Father maintains that when an international move is at issue, *Gruber* should apply, along with additional factors that should be considered. *Id.* Father contends that additional factors to consider would be the ease of travel for either the children or non-custodial parents across an international border, as well as the political, social and legal climate of that country. *Id.* at 52.

¶ 26 Father directs us to no authority requiring that we consider supplemental factors to *Gruber* in cases involving international relocation. In fact, Father acknowledges that he is unaware of any relocation decision which has addressed an international move. We are unaware of any decision involving an international move or a decision requiring consideration of additional factors when conducting a *Gruber* analysis when an international

move is involved. Thus, we have no precedent requiring that we consider additional factors.

¶ 27 While we acknowledge that relocation to certain foreign countries may pose additional hurdles that a court may be forced to consider when presented with a relocation issue under *Gruber*, we do not find relocation to Canada to be one of those countries. Determinations regarding child custody and relocation must be made on a case-by-case basis. *Zoccole v. Zoccole*, 751 A.2d 248, 251 (Pa.Super.2000). Canada is contiguous to the mainland United States and accessible by car from Pennsylvania. The only additional hurdle Father may face is obtaining a passport or carrying with him his driver's license and birth certificate in order to cross the border. We do not find this to be an onerous burden. While we cannot comment on the political, social and legal culture of Canada, we can conclude that its culture is similar enough to that in which the children have been raised that the children should not feel completely alienated. For this reason, we do not find that the trial court erred in failing to consider additional factors due to this relocation involving an international move.

¶ 28 In his penultimate claim, Father maintains that the trial court erred in denying his petition to modify custody. Appellant's Brief at 53. Appellant further argues that this determination is not supported by substantial evidence. *Id.*

¶ 29 As we have noted earlier, we find the trial court did not abuse its discretion in awarding Mother primary physical custody and allowing her to relocate with the children to Canada. Thus, we conclude that the trial court did not err or abuse its discretion in denying Father's petition to modify custody.

¶ 30 Finally, Father argues that the trial court erred in denying his petition for recusal without a hearing, without argument and without an opinion setting forth its reasons for denying the petition. Appellant's Brief at 53. Specifically, Father argues that the trial court showed partiality by failing to "recognize the import of [the Superior Court's] August 13, 2002 Memorandum and Order." Appellant's Brief at 54. Father also maintains that the trial court showed partiality by failing to automatically return the children from Canada following the Superior Court's Order and requiring Father to file a petition to have the children returned. *Id.* at 55. Father argues the trial court's partiality is shown by returning the children to Canada, pursuant to the January 20, 2003, order, against the weight of the evidence and the law of the case established by this Court. *Id.* Father also contends that the trial court attacked him and his counsel in its March 4, 2003, opinion. *Id.* Furthermore, Father asserts that the trial court erred in failing to conduct a hearing regarding this motion. *Id.* at 56.

¶ 31 The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998). Regarding the disposition of a motion for recusal, this Court has explained:

> . . . In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to un-

dermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Chadwick v. Caulfield,* 834 A.2d 562, 571 (Pa.Super.2003) (citations omitted).

¶ 32 We cannot agree with Father's allegations that the trial court's actions can be characterized as reflecting partiality. Adverse rulings alone do not establish the requisite bias warranting recusal, especially where the rulings are legally proper. *Abu–Jamal,* 720 A.2d at 90. We find that the trial court's rulings were legally proper, as explained in this Opinion. Accordingly, we find no abuse of discretion by the trial court in denying Father's motion.

¶ 33 Orders affirmed.