J-S94042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| D.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| K.M.M.-D. | |
| | No. 1223 MDA 2016 |

Appeal from the Order Entered July 1, 2016
in the Court of Common Pleas of Luzerne County Civil Division
at No(s): 2016-00015

BEFORE: LAZARUS, RANSOM, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED FEBRUARY 23, 2017**

D.D. ("Father") appeals from the order entered in the Luzerne County Court of Common Pleas granting K.M.M.-D ("Mother") primary physical custody of K.M.-D. ("Child") and permitting her to relocate to Lehigh County, Pennsylvania.  We affirm.

The relevant facts and procedural history are as follows.  The parties were married on December 6, 2010, Child was born in February 2013, and the parties separated on December 31, 2015, after Mother obtained a temporary protection from abuse ("PFA") order against Father.  This was a second marriage for both parties.

Father filed a divorce complaint on January 4, 2016, and included a count seeking primary physical custody of Child.  On January 25, 2016,

---

[*] Former Justice specially assigned to the Superior Court.

Mother filed a counterclaim in which she sought primary custody. Thereafter, the temporary PFA order was held in abeyance for six months without any admission of wrongdoing or abuse. The order provided that the parties have no contact with one another except as it related to custody of Child. Following a custody conference, Father was awarded certain periods of partial custody, with Mother having custody of Child at all other times.

At that time, Mother continued to live in the marital residence in Sugarloaf, Luzerne County, Pennsylvania. Father temporarily was living in a hotel room but indicated that he would be establishing a residence in Drums, Luzerne County, Pennsylvania. On March 16, 2016, Mother filed a notice of proposed relocation and served notice along with a counter-affidavit on Father. In this notice, Mother indicated that she would relocate to the Lehigh Valley area. On April 4, 2016, Father filed a counter-affidavit regarding the relocation wherein he objected to the relocation and to the modification of the existing custody order.

A two-day consolidated relocation/custody hearing began on June 1, 2016. At this hearing, Father presented his own testimony, as well as testimony from a witness regarding employment opportunities for Mother in Hazelton, Luzerne County, and from Mother's first husband. Mother presented her own testimony, as well as testimony from Child's pediatrician, and A.M.-B., her eleven-year-old daughter from her first marriage.

We summarize Father's evidence. Father testified that he is fifty-one years old and has a high school diploma. He has a twenty-one year-old son, C.D., from his first marriage. After their marriage, Father and Mother lived apart for approximately a year and seven months. Mother lived in a townhouse near Allentown, while Father lived in a single-family home in Hazelton.

According to Father, he and Mother agreed that they wanted to purchase a single-family home. Mother purchased such a home in Sugarloaf, but did not sell her townhouse in Allentown. While Mother was pregnant with Child, the parties, C.D., and A.M.-B. moved into the residence in July 2012. Mother chose to continue to work in the Lehigh Valley, and her daily commute took approximately one hour. Father stated he was a part-time musician.[1] However, Father asserted that he and Mother agreed that he would be a stay-at-home dad and could play music a couple nights of the week at several local venues.

Father stated that he first learned that Mother wanted to relocate and return to her townhouse near Allentown only after the parties' separation. Father testified that he showed Mother a Facebook message regarding employment opportunities in Hazelton, but Mother was not interested. Father further testified that, since separation, Mother has dictated the times

---

[1] Mother testified that Father was employed full-time when they were married.

in which he could see Child and was generally not cooperative. Father testified that Mother similarly gave her first husband a "hard time" with visitation with A.M.-B. N.T., 6/1/16, at 39.

Father asserted that he should be awarded primary physical custody of Child because he can better attend to her needs. Although he conceded that Mother wanted to relocate mainly because of her hour-long commute to work, he also believed that Mother was trying to harm his relationship with Child. If he was awarded primary physical custody, Father would agree to Mother seeing Child every other weekend and Child would attend Drums Elementary, which is "one of the better schools in the Hazelton area." *Id.* at 49.

Father next called Melanie Broyan, who testified that she sent the Facebook message and asserted that employment opportunities for Mother were still available in Hazelton. As his final witness, Father called D.B., who married Mother in 1997, but divorced her in 2008. The trial court sustained Mother's objection to D.B. testifying to any "troubles" he experienced in seeking visitation with A.M.-B. *Id.* at 155-58.

Mother testified that she currently resides in the marital home with Child and A.M.-B and is a pediatrician with the Lehigh Valley Physician Group. According to Mother, she kept a diary of Father's visits with Child in January 2016. She testified that she would not allow Father to have any overnights with Child during the month because a major change had

occurred in Child's life and Child needed to maintain her daily routine. Mother testified that she works "three-quarters time," *i.e.*, no more than sixteen days of any given month, so that she could parent her two daughters. *Id.* at 89.

Mother stated that she has had primary physical custody of A.M.-B. since she was an infant. She and her ex-husband have had a custody arrangement since 2008, but her ex-husband sought a modification of A.M.-B.'s summer schedule. According to Mother, A.M.-B. and Child have a close relationship that would be adversely affected if Father was awarded primary physical custody of Child. Mother testified that she agreed to relocate to Sugarloaf primarily so that C.D. could complete high school in the same school district, but that the parties always agreed that the arrangement was temporary. Mother denied agreeing with Father that he be a stay-at-home dad.

Mother stated that if granted permission to relocate, she intended to keep a close relationship between Child and her paternal grandparents. She further testified that Child's doctor and dentist are located in the Lehigh Valley. Mother asserted she would lose patients if she moved her practice to Hazelton. Finally, Mother testified that she believed a custody arrangement that gave her primary physical custody of Child would maximize the time Child could spend with A.M.-B., and that the sisters should be kept together.

Mother next presented the testimony of Debra Carter, Child's pediatrician. As her final witness, Mother called A.M.-B. Father objected to her testimony, but the trial court held an *in camera* hearing in which A.M.-B.'s competency was established. A.M.-B. testified with regard to the interaction of the parties that she and Child witnessed.

At the conclusion of the hearing, the trial court took the matter under advisement. On July 1, 2016, the trial court granted Mother primary physical custody of Child and permitted her to relocate to her townhouse near Allentown. The parties maintained shared legal custody. Father filed this timely appeal. Both the Father and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Father raises the following issue:

> Whether the child custody order appealed from should be reversed where the statutory factors in 23 Pa.C.S. § 5328 and 23 Pa.C.S. § 5337 do not support the grant of custody or relocation to Mother, and the trial court made errors of law and/or grossly abused its discretion in making findings of fact and conclusions of law that are unsupported by the record?

Father's Brief at 4.

The scope and standard of review in custody matters are well settled.

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we

are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***E.D. v. M.P.***, 33 A.3d 73, 76 (Pa. Super. 2011) (citation omitted).

The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being. ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004)).

Father first challenges the alleged errors made by the trial court while considering the various custody factors set forth in 23 Pa.C.S. § 5328(a). Specifically, Father argues Mother did not encourage frequent and continual contact between Father and Child, as Mother refused to allow Father to see Child, including for overnight visits. Father claims the court erred in precluding the testimony of Mother's first husband that showed Mother has a history of being uncooperative with her children's fathers. Father also alleges that the court improperly relied on the PFA as evidence that he was physically abusive toward Mother. Father contends the court considered isolated instances of Father's past conduct, which led the court to conclude Father could not provide Child with adequate physical safeguards. Father

argues the court also ignored that he maintained the household and was Child's primary caretaker when Mother worked long hours. Father contends that, as a stay-at-home parent, he provided Child with stability.

Father further claims that the court did not acknowledge any evidence regarding the availability of and Child's relationship with Father's extended family. Father contends the court solely relied on the testimony of A.M.-B., a minor, regarding Child's relationships with her siblings, while disregarding other competent evidence that Child and A.M.-B. have limited interaction due to A.M.-B's busy schedule. Finally, Father alleges the court erred in concluding that Mother is more likely to provide Child with a loving and stable relationship despite his valuing of family time. Father maintains Mother is the only parent who has attempted to prevent Child from seeing her other parent. Father concludes this Court should reverse the custody order and award Father primary physical custody. Based on the following, we disagree.

The relevant factors a court must consider in custody matters are as follows:

> **§ 5328. Factors to consider when awarding custody**
>
> **(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1 (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In its opinion accompanying the order at issue, the trial court analyzed each Section 5328 factor. The court found that factors 2.1, 7, 8, 15, and 16 inapplicable to the issues before it. The court further found that factors 1, 3, 5, 11, and 12 weighed equally for each party.

With respect to the remaining factors, the trial court found that the following factors weigh in favor of Mother: (2) "credible testimony indicat[ed] that Father was often verbally and sometimes physically abusive toward Mother in [Child's] presence and that [Child] would react emotionally when this happened;" (4) the need for stability and continuity in Child's education, family life and community life; (6) Mother's older daughter, A.M.-B., "has an extraordinarily fond and interactive relationship with [Child];" (9) Mother is more likely to maintain a loving, stable, consistent and nurturing relationship with Child adequate for Child's needs because she "is a balanced, insightful and caring adult individual who sees her responsibilities

for raising her children as a matter of paramount importance in her life;" and (10) "Mother has demonstrated herself as an extremely caring and capable person who has been and will continue to be both dependable and responsible in attending to [Child's] daily maintenance, developmental and educational needs[.]" Trial Ct. Op., 7/1/16, at 4-8.

Finally, the trial court found that factors 13 and 14 weighed in favor of Mother because, although "there is a considerable level of conflict between the parties[,]" Father's conduct caused Mother to seek a temporary PFA order, and testimony and an exhibit established one incident when Father, while caring for Child, "allowed himself to fall asleep on the living room couch surrounded by empty beer bottles with [Child] sitting on the floor wearing a winter coat." **Id.** at 10 (citation omitted).

We conclude the trial court properly weighed the evidence and made credibility determinations, which we will not disturb. **See E.D.**, 33 A.3d at 76. Father's claims on appeal essentially improperly request this Court to re-weigh the evidence and make credibility determinations different from the trial court. Additionally, we discern no abuse of discretion in the trial court's limiting the testimony from Mother's ex-husband, or in allowing A.M.-B, to testify in camera. Indeed, a review of A.M.-B.'s testimony supports the court's conclusion that she was "a very mature young lady for [her] age." N.T., 6/2/16, at 214.

Next, Father challenges the trial court's order granting Mother's relocation request. Father argues the court abused its discretion in granting relocation based on the factors set forth in 23 Pa.C.S. § 5337(h). Specifically, Father again claims the court ignored that he was Child's primary caretaker from the time she was two-months old. Rather, Father alleges the court improperly focused on his past behavior while emphasizing Mother's alleged caretaking responsibilities. Father also contends that Child's sibling relationship with A.M.-B. should not automatically be elevated above all other factors. Father asserts that he has a new residence in Drums, Pennsylvania, which would provide Child with the opportunity to interact with other children in the community. Father argues that relocation will drastically change Child's relationship with Father, because Mother will use the distance to prevent Child from seeing Father. Father claims the court also dismissed any evidence that Mother has been uncooperative with Father and has denied him access to Child. Father maintains relocation would negatively affect his relationship with Child because the relocation is not geographically convenient for Father, his family, or Mother's parents. Father concludes this Court should reverse the order granting relocation and award Father primary physical custody. Based on the following, we disagree.

Mother, as the party proposing relocation, has the burden of proving that relocation will serve Child's best interest as set forth under Section

5337(h). **See** 23 Pa.C.S. § 5337(i)(1). In addition, "[e]ach party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2). The relevant factors when considering relocation are as follows:

> **(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to,

financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

The trial court found that factor (4) was not relevant given Child's young age, and that the record evidence did not establish a pattern of conduct by either party as contemplated by factor (5).

With regard to the remaining factors, the trial court found as follows: (1) Father's substantial involvement in Child's caretaking for a majority of her young life was "substantially outweighed" by Mother's significance in Child's life "in a multitude of ways including but not limited to caretaking responsibilities[,]" and the fact that Child has "developed an extremely close relationship" with A.M.-B., as well as a "loving relationship" with Father's adult son; (2) relocation "will likely enhance [Child's] overall physical, educational, and emotional development" because Mother's townhouse is located in a planned community that affords "enhanced opportunities for activities and interaction with other children;" (3) relocation would not hinder Father's relationship with Child because "Mother's proposed relocation

- 14 -

is a little more than an hour from Father's current residence and Mother indicates a willingness to meet halfway" such that Father would continue to see Child on a regular basis; (6) relocation "will enhance the quality of life issues for both Mother and Child; and (7) relocation will enhance the general quality of life for Child because "she will benefit from the continuing fond relationship" with A.M.-B, "the added time that Mother will have available for family life," and "a far greater opportunity to interact with her young cousins on the maternal side," given that Mother's sisters live within ten minutes of Mother's townhouse. Trial Ct. Op. at 11-14.

As to factor (8), the reasons and motivation for each party to seek or oppose the proposed relocation, the trial court concluded:

> Broadly speaking, Mother's motivation in relocating is to improve the quality of life for herself and her children. She lived in the Lehigh Valley both before and during the first nineteen months of her marriage and has a significant support base including family and friends close by. She testified, credibly, that her decision to buy a large home in Sugarloaf in July of 2012 was largely driven by wanting to accommodate [Father's] desire to have his son, [C.D.] live with them. [Mother] chose to continue to make the sacrifice of a significant commute to and from work in [the Lehigh Valley] even after [Child] was born. However, with her marriage to Father having failed, she no longer has any desire or reason to reside there and has several good reasons, beneficial to both [Child] and [Mother], in wanting to move back to her townhome in [Lehigh County]. The relocation would be further enhanced by Mother's proximity to her well-established work location in [the Lehigh Valley] with a patient base and organization that holds her in high esteem.

*Id.* at 14-15.

- 15 -

Finally, the trial court noted that it had previously discussed factor (9) in relation to the custody factors, and that regarding factor (10), the factors that favored Mother in its custody determination also affected the best interest of Child.

Once again, Father's claims on appeal seek to have this Court re-weigh the testimonial evidence, which we will not do. **See E.D.**, 33 A.3d at 76. We discern no error by the trial court in concluding that Mother satisfied her burden of proof. We, therefore, hold the court's factual findings are supported by competent testimonial evidence, and its conclusions are reasonable in light of those findings.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2017