J-A02013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.J.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.L.B. | : | |
| | : | |
| Appellant | : | No. 842 WDA 2017 |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of Cambria County Civil Division at No(s):
No. 2005-3380

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 27, 2018**

J.L.B. ("Father") appeals *pro se* from the May 10, 2017 order that, *inter alia*, temporarily suspended his overnight custody with his thirteen-year-old daughter, A.B., and ordered him to participate in a court-approved counseling program to address parent-child relationships.  We affirm.

The trial court aptly summarized the factual and procedural history of this case as follows.

1. This matter concerns the child of [Father and D.L.B., ("Mother")], born [in] July [of] 2003.  The parties are her birth mother and father.

2. The parties were formerly married, but have been separated for many years.

3. The current custody arrangement was determined by an Order dated October 14, 2011, pursuant to which [Father] had alternate weekend periods of partial custody.

. . . .

6. Litigation in this case, at least since the involvement of the undersigned court [during 2014,] has been difficult and acrimonious.

. . . .

8. Over the litigated objections of [Father], Raymond Harris[, PhD,] has been acting as a counselor for [A.B.], as authorized by the Order of March 18, 2016.

9. Dr. Harris has counseled [A.B.] on her moods and anxiety, particularly as it relates to on the ongoing litigation between her parents and their divorce.

. . . .

22. As noted, this matter has been extensively litigated, with [Father] until recently showing great animosity for the [c]ourts, [Mother's] attorney and anyone else involved in these custody disputes. The [c]ourt does note however, the more positive attitude on the part of [Father] in recent times.

Findings of Fact, 5/10/17, at unnumbered 1-3.

On March 8, 2017, Mother filed a petition for special relief, requesting that the trial court suspend A.B.'s overnight visits with Father due to A.B.'s most recent exposure to lice at Father's residence and her deteriorating mental health caused by the visits. The trial court held a hearing on Mother's petition on April 3, 2017. At the hearing, James Pappas, Esquire, represented Mother and presented the testimony of Dr. Harris and Mother.

Father testified on his own behalf. Roger McGill, Esquire, who was appointed as A.B.'s legal counsel,[1] presented the testimony of A.B.

On May 10, 2017, the trial court entered an order suspending overnight visits with Father for a period of ninety days. The trial court also ordered Father to engage in court-approved counseling at his own expense and, if requested, participate in counseling sessions with A.B. and Dr. Harris. On June 9, 2017, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal that asserted the claims he reiterates herein as follows:

1. Did the trail [sic] court deny [Father] and Children Due Process?

2. Did the Children [s]uffer [h]arm?

3. Is the Custody Order of October 14, 2011 a valid order?

4. Was there attorney misconduct?

5. Was there professional misconduct (Dr. Harris)?

6. Was there judicial misconduct? Is [d]isqualification [m]andatory?

7. Did the trial court have Jurisdiction?

8. Are sanctions and other remedies indicated?

_____

[1] Although the parties reference Attorney McGill as A.B.'s guardian *ad litem*, the record is clear that the trial court appointed Mr. McGill as A.B.'s counsel, charged with representing her legal interests. **See** Order, 8/21/15.

Father's brief at 13.[2]   Mother declined to file a responsive brief, and we granted her counsel leave to withdraw from representation prior to argument.   A.B.'s counsel filed a brief that challenges the propriety of Father's appeal and, in the alternative, supports the merits of the trial court's order.

At the outset, we address A.B.'s contention that the present appeal is not properly before us because it is an interim order that suspended Father's periods of overnight custody for ninety days.   Generally, a custody order is appealable only where it is entered after the court has completed its hearing on the merits and where it is intended to constitute a complete resolution of the custody claims.   *G.B. v. M.M.B.*, 670 A.2d 714 (Pa.Super. 1996). Instantly, the trial court entered a final custody order on October 11, 2011, and the May 10, 2017 order the Father appealed does not vacate, nullify, or modify the final order aside from the temporary change in overnight visitation.

If the instant appeal was limited to the ninety-day suspension of overnight custody or another temporary aspect of the May 10, 2017 order, we would agree with A.B. that the appeal should be dismissed as

---

[2] Father does not specifically challenge the portions of the May 10, 2017 order that: (1) temporarily suspended his overnight custody; (2) provided additional periods of partial custody during the suspension; and (3) required Father and A.B. to have reasonable non-threatening communications on a regular basis.  We do not address those aspects of the custody order.

interlocutory.[3]   However, Father's remaining arguments that challenge the trial court's jurisdiction to enter the May 10, 2017 order and the permanent aspects of the order that require him to pay for parental counseling and participate, if required, in A.B.'s treatment with Dr. Harris are undoubtedly final and appealable.   Thus, notwithstanding A.B.'s protestations to the contrary, we cannot dispose of the instant appeal summarily.

We address Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.   We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.   In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.   However, we are not bound by the trial court's deductions or inferences from its factual findings.   Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.   We may reject the conclusions of the trial court only if they involve an error of law,

---

[3] Isolating the portion of the order that temporarily suspended Father's custody rights, A.B. also asserts that the appeal is moot because more than ninety days have passed since the order took effect.  This claim fails for at least three reasons.  First and foremost, since Father does not challenge the temporary suspension of his overnight custody, A.B.'s assertion regarding mootness is irrelevant.  Moreover, assuming *arguendo* that Father contested the suspension on appeal, the May 2017 order did not restore Father's custodial rights automatically upon the expiration of the ninety-day period, and the certified record does not reveal that the trial court has restored the 2011 custody arrangement in the interim.  Finally, presuming both that Father asserted the issue and that the pertinent rights have been restored, only the issues relating to that portion of the order would be affected.  The remaining aspects of the May 2017 order on appeal persist.

or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa.Super. 2006) (citing ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa.Super. 2004)).

As a prefatory matter, the defects in Father's brief are substantial. Father's fifty-eight page argument is rambling, repetitive and often unintelligible. ***See*** Pa.R.A.P. 2119. Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant. ***See Wilkins v. Marsico***, 903 A.2d 1281, 1284-85 (Pa.Super. 2006). Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of this Court. This Court may quash or dismiss an appeal if an appellant fails to conform with the requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. Nonetheless, in the interest of justice we address the arguments that we can reasonably discern from the marginally coherent brief.

As Father's first three issues appear to be related, we address them collectively. Father challenges the validity of the initial child custody order

entered on October 14, 2011. Specifically, he asserts that the trial court denied him his right to due process by failing to schedule trial and issue a prompt decision within the time limits set forth in the applicable rules and statutes. *See* Father's brief at 46-49.

Father's contentions, which assail the validity of what is now a six-year-old custody order, are beyond our jurisdictional mandate. Pennsylvania Rule of Appellate Procedure 903 requires that a party file an appeal "within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). As the thirty-day period is jurisdictional in nature, it must be strictly construed. *Sass v. AmTrust Bank*, 74 A.3d 1054, 1063 (Pa.Super. 2013) ("Our Courts have reaffirmed on countless occasions that timeliness is jurisdictional, as an untimely appeal divests this Court of jurisdiction to hear the merits of the case").

Here, the custody order Father complains of was entered on October 14, 2011. Accordingly, Father had thirty days, or until November 14, 2011, to file a notice of appeal. As Father is challenging this order now, over six years after the order became final, these contentions are untimely. Hence, we lack jurisdiction to address the first three issues listed in Father's statement of questions presented on appeal.

In his fourth and fifth issues, Father alleges that the respective attorneys representing Mother and A.B., and the child's former guardian *ad litem*, Timothy Sloan, Esquire, all engaged in attorney misconduct. He also

- 7 -

asserts that Dr. Harris, A.B.'s counselor, committed professional misconduct. *See* Father's brief at 53-67.

Father summarized his position as follows.

Instead of acting in [A.B.'s] best interest, Appellee/Mother, by and through her attorney, [Attorney] Pappas, and through collusion with appointed attorney, [Attorney] McGill, delayed treatment of [A.B.'s] severe anxiety issues until she was able to arrange for her to see the counselor of he[r] choice. This is deplorable. Treatment was delayed for over 6 months and the subsequent "therapy" by Dr. Harris has been ineffective. It should be of no surprise that [A.B.] continued to suffer at the time to the hearing on 4/3/17.

Father's brief at 57 (emphasis omitted).

No relief is due. First, in relation to Attorney Sloan, the certified record demonstrates that he was removed as A.B.'s guardian *ad litem* on March 24, 2016. Thus, Attorney Sloan was not involved in the May 10, 2017 proceedings from which Father appeals. Furthermore, as it relates to the remaining attorneys and Dr. Harris, Father's claims are both stale and fatally undeveloped. While the crux of Father's contentions is that Mother refused to send A.B. to the therapist of his choice and convinced the court to appoint Dr. Harris as A.B.'s counselor instead, that contention relates to a prior order that is not implicated in this appeal. The trial court appointed Dr. Harris on March 24, 2016, and Father failed to appeal that order pursuant to Pa.R.A.P. 903(a). Thus, the current attempt to challenge the propriety of Dr. Harris's appointment is untimely.

Likewise, to the extent that Father's argument can be interpreted as relating to the May 10, 2017 order, his rambling narrative fails to present any cogent discussion of the alleged misconduct in a meaningful fashion that is capable of review, and he does not cite relevant authority in support of his position. Thus, the issues are waived. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").

Next, we consider Father's sixth issue, in which he asserts that the current trial judge, the Honorable John B. Leete,[4] was required to recuse himself due to his prejudice against Father and his "willful and malicious disregard of the rules regarding custody hearings." Father's brief at 75. Father complains that Judge Leete's validation of the initial custody order entered on October 14, 2011, and his "blatant hypocrisy [and] desire to cover up the misconduct of the attorneys in this matter" was inherently prejudicial and requires recusal. Father's brief at 75. We disagree.

"[A] party to an action has the right to request the recusal of a jurist where that party has a reason to question the impartiality of the court."

---

[4] Judge Leete is a Potter County Judge who was assigned to the case on December 4, 2014, in order to assuage Father's chronic distrust of Cambria County jurists against whom he filed serial petitions for recusal from the ongoing custody and divorce litigation in Cambria County.

*Goodheart v. Casey,* 565 A.2d 757, 762 (Pa. 1989). "Recusal is required wherever there is substantial doubt as to the jurist's ability to preside impartially." *In Interest of McFall*, 617 A.2d 707, 713 (Pa. 1991). "[A] judge's behavior is not required to rise to a level of actual prejudice, but the appearance of impropriety is sufficient." *Id*. at 712.

This Court previously outlined the pertinent inquiry.

> The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. Regarding the disposition of a motion for recusal, this Court has explained:
>
>> In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to access the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Arnold*, *supra* at 680-81 (cleaned up).

On a prior appeal, this Court rejected Father's assertion that Judge Leete was obligated to recuse himself due to his alleged partiality, and we reject the present claim for the identical reason, *i.e.*, "[n]othing in the record suggests that Judge Leete lacked the ability to preside over this matter

- 10 -

impartially." **See J.L.B. v. S.A.T.**, 154 A.3d 855 (Pa.Super. 2016)(unpublished memorandum at 11-12). As we reiterated in **Arnold**, **supra** at 681, "[a]dverse rulings alone do not establish the requisite bias warranting recusal, especially where the rulings are legally proper." Father's argument regarding Judge Leete is largely derivative of his misplaced contention that the October 14, 2011 custody order is null and void due to the alleged constitutional deficiencies surrounding that order. However, the record belies this predicate assertion. As the notion that the trial court deprived Father of a full and fair hearing is baseless, no relief is due.

Father's seventh issue contends that the trial court lacked jurisdiction to enter the May 10, 2017 order. Attempting to build on his foregoing contentions, Father posits that, in light of Judge Leete's mandated recusal and the nullification of the October 14, 2011 custody order, the trial court lacked jurisdiction to decide Mother's petition for special relief. He expresses this argument as the following equation: "No Order + No Judge = No Jurisdiction." Father's brief at 85. Unfortunately for Father, this formula is founded on the baseless assertions that the 2011 custody order was a nullity and that Judge Leete's alleged partiality warranted recusal. As we have unequivocally rejected both of these contentions, Father's calculation does not compute.

Finally, Father argues that the combined misconduct of the attorneys, professionals, and judges throughout the history of this case justifies an

award of "severe sanctions." Father's brief at 86. Title 23 Pa.C.S. § 5339 sets forth the guidelines for an award of counsel fees and costs in custody matters. Specifically, § 5339 states, "[u]nder this chapter, a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S. § 5339. Our review of the record reveals no evidence that either Attorney Pappas, Attorney McGill, Dr. Harris or Judge Leete engaged in obdurate or vexatious conduct. Accordingly, we deny Father's request for counsel fees, costs and expenses. *See* 23 Pa.C.S. § 5339.

Based on the foregoing discussion, we affirm the May 10, 2017 order that temporarily suspended Father's overnight physical custody of A.B., directed him to engage in parental counseling at his own expense, and, if requested, participate in A.B.'s therapy with Dr. Harris.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2018