J-S15030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| H.C.Z. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.K.Z. | : | No. 1727 WDA 2019 |

Appeal from the Order Entered October 23, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 16-008902-008

BEFORE:   BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 17, 2020**

Appellant, H.C.Z. ("Father"), appeals the October 23, 2019 order modifying custody between Father and J.K.Z. ("Mother").  We affirm, in part, and vacate, in part, and remand the case with instructions.

The trial court summarized the factual and procedural history as follows:

The parties married in 2004 and are the parents of three children, aged 7, 9, and 11 [(collectively, "the children")].  During the marriage, the parties lived in the Upper St. Clair school district[, located in Upper St. Clair, a suburb of Pittsburgh, Pennsylvania].  Father moved out of the marital residence in July []2016 to an apartment complex in the North Hills of Pittsburgh where his paramour lived, approximately one hour away.  Mother remained with the children in the marital home in Upper St. Clair[,] where the children have remained in school.  When the divorce was final in 2019, Father married his paramour and they purchased a home in Wexford, [Pennsylvania,] approximately 45 minutes from Upper St. Clair.

---

[*] Former Justice specially assigned to the Superior Court.

Trial Court Opinion, 1/13/20, at 2-3 (footnote omitted).

After Father moved out of the marital residence, Father and Mother consented to custody arrangements for the children as set forth in the order entered March 22, 2017, and subsequently modified by orders entered October 18, 2018, and October 22, 2018 (collectively, "the custody order"). Under the custody order, Mother exercised primary physical custody of the children and Father retained partial physical custody of the children.[1] On October 30, 2018, Father filed a petition for modification of partial physical custody. On February 27, 2019, Mother filed an emergency petition for modification of the custody order.

A hearing was held before a custody hearing officer on March 5, 2019, and May 8, 2019. Upon conclusion of the hearing, the custody hearing officer filed a report and recommendation on May 21, 2019.[2] The trial court entered a temporary order on May 21, 2019, modifying the terms of the custody order and notified parties that the temporary order would become a final order unless a party filed exceptions within 20 days.

On June 6, 2019, Father filed exceptions to the temporary order asserting error in the failure to permit school year overnight weekday custody,

---

[1] Section 5322 of the Child Custody Act defines primary physical custody as "[t]he right to assume physical custody of the child for the majority of time" and defines partial physical custody as "[t]he right to assume physical custody of the child for less than a majority of the time." 23 Pa.C.S.A. § 5322(a).

[2] The record demonstrates that a second copy of the custody hearing officer's report and recommendation was filed on May 24, 2019.

to expand his school year weekend custody, and to expand his summer custody. After a hearing on Father's exceptions, the trial court sustained, in part, Father's exceptions pertaining to weekend custody during the school year and denied the remaining exceptions pertaining to overnight weekday custody during the school year and expanded summer custody. On October 23, 2019, the trial court entered a final order of custody ("the final custody order") that included the modified provisions. This appeal followed.[3]

Father raises the following issues for our review:

I.  Whether the [t]rial [c]ourt committed an abuse of discretion in failing to expand Father'[s] school year [weekend] custody by more than a few hours, and failing to award []overnight [weekday] custody, based upon an alleged "lengthy" car ride and [the] children's preference?

II. Whether the [t]rial [c]ourt committed an abuse of discretion[] in failing to expand Father's summer custodial schedule, despite the [custody h]earing [o]fficer making a finding that an expansion was warranted, [and] ratifying the then existing summer custody schedule[,] which did not expand Father's summer custody?

Father's Brief at 4.

Our scope of review and standard of review of modifications to custody orders are as follows:

The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence

_____

[3] On November 21, 2019, Father filed a concise statement of errors complained of on appeal with his notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court subsequently filed its Rule 1925(a) opinion on January 13, 2020.

to support it.  However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.  Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

[]On issues of credibility and weight of the evidence, we defer to the findings of the trial court who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child.  Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (citations, original brackets, and ellipses omitted).  Simply stated, "[t]he test is whether the evidence of record supports the trial court's conclusions" and the conclusions are grounded in a comprehensive evaluation of the best interest of the child.  *Id.* (citation omitted).

Section 5338 of the Child Custody Act states that when considering a modification of an existing custody order, "[u]pon petition, a court may modify a custody order to serve the best interest of the child."  23 Pa.C.S.A. § 5338(a).  It is only when the request for modification involves a change in the type of custody awarded that trial courts are required to consider the sixteen factors enumerated in 23 Pa.C.S.A. § 5328(a) in determining the best interest of the child.  *M.O. v. J.T.R.*, 85 A.3d 1058, 1062 (Pa. Super. 2014).  Otherwise, when the order does not change the underlying type of custody

awarded but, rather, only changes a finite term or parameter of the existing custody arrangements, the trial court is required to consider the requested modification only in the best interest of the child.[4] *Id.* at 1063. "The best interest[ of the child] standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *C.M. v. M.M.*, 215 A.3d 588, 591 (Pa. Super. 2019), *quoting* *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674 (Pa. Super. 2004).

The burden is on the parent requesting the modification to show that the requested modification is in the best interest of the child.

> It is axiomatic that the potential harm that may result from the disruption of established patterns of care and emotional bonds underscores the need for continuity, stability, and finality imparted to custody arrangements. A modification of custody is not warranted merely because one parent is unhappy with the existing arrangement. Thus, we repeatedly have emphasized that a party requesting modification must prove that the alteration of an existing custody arrangement is in the child's best interest.

*Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa. Super. 2004) (citations omitted).

---

[4] We recognize that prior panels of this Court held that the sixteen factors enumerated in Section 5323(a) are required to be considered in review of certain custody modification orders. *See M.O.*, 85 A.3d at 1062 n.2. As noted in *M.O., supra*, however, those custody modification orders involved requests to change the type of custody awarded to a parent, as well as requests for modification, and were not limited to requests to change a finite term or parameter of the existing custody arrangements. *Id.* at 1062. We concur with the *M.O.* Court that "[a] contrary decision, requiring application of the strictures found in Section 5328(a) [] to each and every decision that is subsidiary or ancillary to a custody dispute, would impose an undue burden on trial courts and, by extension, on custody litigants." *Id.* at 1063 n.4.

Here, Father's petition for modification of partial physical custody requested that the children be afforded more time with Father. Father's Petition for Modification of Partial Physical Custody, 10/30/18, at ¶4. Father did not request modification of the type of custody he was awarded but, rather, requested modification of the hours when he enjoyed partial physical custody. Father's Pre-Trial Statement, 2/26/19, at Proposed Custody Order of Court ¶3. Specifically, Father proposed,

> The parties shall share physical custody as follows:
>
> a. Father shall have custody every other weekend from Thursday at noon (or after school, if a school day) until Monday at 4[:00] p.m. (or school drop off, if a school day);
>
> b. Father shall have custody on the alternate weeks from Wednesday after school (or 4[:00] p.m. if not a school day) until Friday morning school drop off (or 9[:00] a.m. if not a school day);
>
> c. Mother to have custody at all other times.

*Id.* We find that Father sought to modify only finite terms of the custody arrangement and not the type of custody. Therefore, the trial court needed to consider only the best interests of the children and did not need to consider the sixteen factors enumerated in Section 5328(a), although it could consider them when assessing the best interest of the children.[5]

---

[5] We note that Father argues erroneously that the trial court must consider the sixteen factors enumerated in Section 5328(a) in deciding his request for modification. Father's Brief at 9. As discussed *supra*, the trial court is required to consider only the best interests of the children. A review of Father's position demonstrates he adequately framed his argument in the context of the best interests of the children. *Id.* at 9-13.

Father first challenges the trial court's failure to award overnight weekday custody and to expand his school year weekend custody by only a few hours. Father's Brief at 9-13. Father contends that it is in the best interest of the children to modify his time during the school week so they "would have the benefit of having Father integrated into their school and activity schedules." *Id.* at 12. Father asserts that the trial court erred in finding that "Father's request was designed only to serve his interests and not the best interests of the children." *Id.* at 11. Father argues that the trial court "found that an extra **13-17** minutes in the car was an impediment to Father exercising additional school year custody and not in the children's best interest." *Id.* (emphasis in original).

The trial court modified the custody order with regard to Father's school year partial custody as follows:

> On the weekends during the school year when Father exercises his partial custody, he shall pick up the children at school on Friday after school has ended and drop them off on Monday morning at the start of the school day. If the children do not have school on a Friday [that] falls during Father's custody time, he may pick the children up at Mother's home at noon. If the children have activities after school on Friday during Father's custody time, it is Father's responsibility to get the children to those activities.

Trial Court Order, 10/23/19. By so ordering, the trial court expanded Father's school year custody by permitting Father to pick the children up after school on the Fridays corresponding to his custody weekends or at noon if there were no school that particular Friday, instead of picking the children up at 5:00 p.m. at Mother's house. All other aspects of Father's school year custody, including

his partial custody each Wednesday from 5:00 p.m. to 7:00 p.m., remained the same.

The trial court determined "that the additional stress and burden placed on the children by the lengthy car ride to and from school [when staying at Father's house], coupled with their reluctance to expand their time in Father's custody, more than offset any potential benefit afforded to them by the modification." Trial Court Opinion, 1/13/20, at 7. The trial court examined the children's best interests, as evidenced by its consideration that overnight weekday custody during the school year would require the children to get out of bed earlier and would require a longer ride to and from school.[6] *Id.* at 5. The trial court found the children had extra-curricular activities after school ended that already extended their length of time out of the house and that this, coupled with a longer ride to Father's house after concluding their activities, would result in the children not arriving home until quite late. *Id.* The trial court explained that it was not in the children's best interests to

_____

[6] We note that the trial court attributed 45 minutes of additional commute time to or from school when the children were at Father's house. However, the trial court failed to consider the commute time to or from school when the children were at Mother's house. The record demonstrates that the children spent approximately 20 minutes on a bus ride to or from school when at Mother's house. N.T., 5/8/19, at 63, 110. Nonetheless, the children would experience an additional 25 minutes of commute time to or from school when they are at Father's house using the approximations *supra* and this additional time would require the children to get out of bed earlier in order to arrive at school on-time.

require an extended commute to and from school when staying at Father's house so that "Father can feel he has more involvement with their school activities.[7]" *Id.* at 6. The trial court noted that it was Father's choice where to relocate and he chose to relocate to an area close to his new wife's family. *Id.* Moreover, the trial court considered the testimony of the children in which one child indicated they needed to get up earlier in the morning because of the additional commute time, a second child indicated a difficulty of sleeping at Father's house because of missing Mother, and the third child indicated a fear of sleeping at Father's house because of a lack of a nightlight. *Id.* The trial court's findings of fact are supported by competent record evidence, and the trial court considered thoroughly the children's best interests in deciding whether to modify custody during the school year. Therefore, we find no error in the trial court's final custody order with regard to the school year modifications.

Father's second issue challenges the trial court's decision not to modify the custody order with regard to the summer custody arrangements. Father's Brief at 13-14. Father contends the custody hearing officer "found that Father should exercise more time in the summer." *Id.* at 13. Father asserts that the

---

[7] Father explained, "So right now usually when I [pick them up from Mother's house], they have been out of school for a few hours, and [] they are not really talking about their day very much. But if I get them right out of school, as with other events, they talk about what's going on, talk about what they did, and []it allows me to become much more connected with their school day and with what[] that part of their life is." N.T., 5/8/19, at 7-8.

trial court abused its discretion by failing to expand his summer custody. **_Id._** at 13-14.

The final custody order modified summer custody arrangements such that Father was given custody from Thursday at 12:00 p.m. to Monday at 9:00 a.m. on his custody weekends. In the week leading up to Mother's custody weekend, Father was given custody from Wednesday at 12:00 p.m. to Friday at 9:00 a.m.[8] In modifying the summer custody arrangements, the trial court explained,

> A review of the transcript reveals that Father was given the schedule that he requested at trial. Father now appears to be disappointed that he was not given more than he requested. As Father received what he asked for, this argument should be deemed waived.

Trial Court Opinion, 1/13/20, at 7.

Father's testimony at the hearing demonstrated that Father requested summer custody from Thursday at 12:00 p.m. to Monday at 4:00 p.m. on his custody weekends. In the week leading up to Mother's custody weekends, Father requested summer custody from Wednesday at 4:00 p.m. to Friday at 9:00 a.m. Although it appears that Father received the same number of requested hours of summer custody after the modification, the distribution of

---

[8] Prior to the modification, the summer custody arrangement on Father's custody weekends was from Friday at 5:00 p.m. to Monday at 9:00 a.m. (or to 4:00 p.m. if Father were not at work). In the week leading up to Mother's custody weekends, Father had custody from Wednesday at 5:00 p.m. to Thursday at 9:00 a.m. and Thursday at 5:00 p.m. to Friday at 9:00 a.m. (or Wednesday at 5:00 p.m. to Friday at 9:00 a.m. if Father did not have work on Thursday).

those hours in the final custody order was not what Father requested. Therefore, Father did not waive this issue.

A review of the trial court's modification of the summer custody arrangements reveals that the trial court did not consider the best interests of the children, as required, but, rather, viewed the modification as giving Father what he requested. *Id.* While school was in session, the trial court determined the interests of the children were best served by, *inter alia*, limiting both the length and the number of car rides to and from school, and the need for the children get out of bed earlier in the morning in order to be on-time for school. The trial court, however, made no findings concerning the best interests of the children during the summer. Therefore, we find that the trial court erred as a matter of law with regard to the summer custody arrangements by not considering the best interests of the children when determining the modification of the summer custody arrangements. Consequently, we vacate the final custody order, in part, as it pertains to the summer custody arrangements and remand the case to the trial court with limited instructions to consider the best interests of the children in modifying and expanding Father's summer custody.

Order affirmed, in part, vacated, in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/17/2020</u>